UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MALIK FLOWERS,

    Plaintiff,

v.

M. FRANCOISE, et al.,

    Defendants.

Civ. No. 18-13686 (PGS) (DEA)

**OPINION**

**PETER G. SHERIDAN, U.S.D.J.**

### I. INTRODUCTION

Plaintiff, Malik Flowers ("Plaintiff" or "Flowers"), is a state prisoner proceeding *pro se* with a civil rights complaint filed pursuant to 42 U.S.C. § 1983. Pending before this Court is Plaintiff's motion for summary judgment and for clarity (*see* ECF 56), and Court Defendants', M. Francoise, Marie Desane, Sue Spingler, Inaish Jackson and Xiangrong Zhou (hereinafter the "Moving Defendants") second motion for summary judgment. (*See* ECF 66). For the following reasons, Moving Defendants' second motion for summary judgment is granted and Plaintiff's motion for summary judgment and clarity is denied.

### II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed his complaint in September, 2018. (*See* ECF 1). Plaintiff's challenges the care, or lack thereof, he received while incarcerated at the New Jersey State Prison ("NJSP"). More specifically, this Court noted the allegations of Plaintiff's complaint in its screening opinion as follows:

> Plaintiff . . . filed a complaint against Defendants, who are nurses, a nurse practitioner, and a doctor employed in the prison's medical department. (ECF No. 1). According to Plaintiff's complaint, in November 2016, he was diagnosed with diabetes, and was

> prescribed medications including insulin to control his blood sugar and related issues. (*Id.* at 5). In January 2017, Plaintiff was 'taken off of insulin and prescribed 10 mg of glipizide" to control his diabetic symptoms, which he continued to receive daily until September 2017. (*Id.*).
>
> On or about September 12, 2017, Plaintiff stopped receiving his daily medication. (*Id.*). Plaintiff complained to numerous nurses and nurse practitioners over the course of several months, but was variably told that they would either look into his medication with no results for several months, or that he had not been prescribed the medication he had previously received for nine months. (*Id.* at 6). Despite these complaints to Defendants Zhou, Desane, Francoise, Spingler, and Jackson, Plaintiff did not receive his medication. (*Id.*). According to the complaint, Plaintiff did not resume receiving medication until February 2018, when he was seen by Defendant Dr. Nwachukwu. (*Id.* at 7). During that examination, it was discovered that Petitioner's insulin issues had again become serious due to the lack of his glipizide, and Plaintiff was placed back on insulin to bring his diabetes under control. (*Id.*). Plaintiff therefore asserts Defendants' refusal to resume his medication prior to his February 2018 appointment with Dr. Nwachukwu despite his continuous complaints amounts to a denial of medical care in violation of the Eighth Amendment.

*Flowers v. Francoise*, No. 18- 13686, 2019 WL 1967028, at *1 (D.N.J. May 2, 2019). This Court dismissed Plaintiff's deliberate indifference claim against Defendant Nwachukwu for failure to state a claim upon which relief may be granted at screening, but proceeded Plaintiff's deliberate indifference claims against the remaining defendants, *i.e.* the Moving Defendants.

Moving Defendants then sought to dismiss Plaintiff's complaint. (*See* ECF 17). They argued Plaintiff failed to state a claim upon which relief could be granted and that Plaintiff had failed to exhaust his administrative remedies. On February 20, 2020, this Court denied Moving Defendants' motion to dismiss. (*See* ECF 27 & 28). Thereafter, Moving Defendants filed an answer to the complaint. (*See* ECF 29). Subsequently, this matter moved forward into discovery.

On February 10, 2021, Moving Defendants filed their initial motion for summary judgement. (*See* ECF 53). Thereafter, Plaintiff filed a cross-motion for summary judgment which

also doubled as his response in opposition to Moving Defendants' initial motion for summary judgment.[1] (*See* ECF 56-1).

On September 23, 2021, this Court denied Moving Defendants' initial motion for summary judgment without prejudice. (*See* ECF 65). This Court noted significant errors associated with Moving Defendants' motion. Indeed, the motion appeared to mischaracterize evidence in citing to the record provided and/or cited to evidence in the record that simply was not included by Moving Defendants. (*See id.* at 1-3). Despite these errors, this Court granted Moving Defendants a short period of time to correct the record regarding the errors spotted in their initial motion for summary judgment.

On September 30, 2021, Moving Defendants filed a second motion for summary judgment that is virtually identical to its initial motion for summary judgment. (*See* ECF 66). This second motion for summary judgment appears to correct the errors this Court noted in its September 23, 2021 order with respect to Moving Defendants' initial motion for summary judgment.

After Moving Defendants filed their second motion for summary judgment, Plaintiff indicated his initial, still pending motion for summary judgment would also continue to serve as his response to Moving Defendants' second motion for summary judgment. (*See* ECF 68). Thereafter, Moving Defendants filed a reply in support of their second motion for summary judgment. (*See* ECF 69). Plaintiff's motion for summary judgment and Moving Defendants' second motion for summary judgment are now ready for adjudication.

---

[1] Plaintiff also sought clarity along with his motion for summary judgment which is discussed *infra*. (*See* ECF 56-1).

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude the Court from granting a motion for summary judgment. *See id.*

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A party asserting that a fact [is not] genuinely disputed must support the assertion by ... citing to particular parts of materials in the record, including depositions, documents ..., affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *See Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

"If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). The Court's role in deciding a motion for summary judgment is simply "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

## IV.     DISCUSSION

Plaintiff sues Moving Defendants for their purported deliberate indifference in not providing him Glipizide, a keep-on-person medication to help treat his diabetes, from September, 2017 until January, 2018 in violation of his Eighth Amendment rights.

> For the delay or denial of medical care to rise to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)). We have found deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse*, 182 F.3d at 197. Deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts "disavow any attempt to second-guess the propriety or adequacy of a particular course of

> treatment ... (which) remains a question of sound professional judgment." *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)). Allegations of negligent treatment or medical malpractice do not trigger constitutional protections. *Estelle v. Gamble*, 429 U.S. 97, 105-06, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

*Pierce v. Pitkins*, 520 F. App'x 64, 66 (3d Cir. 2013). Deliberate indifference can also be found "where the prison official persists in a course of treatment in the face of resultant pain and risk of permanent injury." *See McCluskey v. Vincent*, 505 F. App'x 199, 202 (3d Cir. 2012) (internal quotation marks and citation omitted). "A medical need is serious if it 'has been diagnosed by a physician as requiring treatment,' or if it 'is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *See Mitchell v. Beard*, 492 F. App'x 230, 236 (3d Cir. 2012) (*quoting Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003) (quoting *Monmouth Cnty. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987))).

Plaintiff was initially prescribed ten milligrams of Glipizide daily for one year in November, 2016. (*See* ECF 67 at 209). However, on January 12, 2017, the Glipizide prescription was changed to 180 days. (*See id.* at 197). The medical records indicate Plaintiff gave his verbal understanding of this change. (*See id.*). Accordingly, Plaintiff's prescription for Glipizide would now only be through July 11, 2017. (*See* ECF 67-1 at 2). Indeed, at subsequent medical visits on March 3, 2017 and May 24, 2017, Plaintiff's 180-day, rather than the year prescription of Glipizide is clearly noted. (*See* ECF 67 at 182, 193).

Moving Defendants also provided this Court with Plaintiff's medical records related to Plaintiff's September 7, 2017 endocrine care visit with Defendant Jackson. (*See id.* at 174-80). Those records indicate Plaintiff had no complaints with his medications (despite Plaintiff no longer being prescribed Glipizide), that his chronic care was in fair control and that Plaintiff

agreed with the treatment plan moving forward. (*See id.* at 175, 177). It is at and/or soon after this September 7, 2017 meeting that Plaintiff asserts his Eighth Amendment rights were violated by the Moving Defendants for reasons associated with his purported lack of access to Glipizide.

Moving Defendants argue as follows in their second motion for summary judgment:

1. Plaintiff failed to show that he suffered from a serious medical need
2. Plaintiff failed to show that Moving Defendants were deliberately indifferent to his serious medical needs
3. Plaintiff failed to exhaust his administrative remedies

(*See* ECF 66-2). Before analyzing Moving Defendants' lack of exhaustion argument or that they are entitled to summary judgment because Plaintiff did not have a serious medical need, this Court will first examine whether Moving Defendants are entitled to summary judgment because there is no genuine issue of material fact on whether they were deliberately indifferent to Plaintiff.

  A. <u>Defendants Francoise & Desane</u>

Plaintiff's deliberate indifference claim against Francoise and Desane arise from their purported lack of care to Plaintiff between September 12, 2017 and January 15, 2018. Plaintiff states he complained to these two Defendants during these dates about not receiving Glipizide.[2] (*See* ECF 56-3 at 2-3). However, Plaintiff's medical records make clear that he was not *prescribed* Glipizide from September 12, 2017 until October 25, 2017. (*See* ECF 67 at 197; ECF 67-1 at 2).

Francoise is a nursing/medical assistant and Desane is a Licensed Practical Nurse ("LPN"). (*See* ECF 56-3 at 2; ECF 66-4 at 1; ECF 66-5 at 1). Both worked on Plaintiff's cell

---

[2] Plaintiff's statement of undisputed material facts states he complained to Francoise between September 12, 2017 and January 5, 2018. However, this Court presumes given Plaintiff's allegations of the complaint the January 5, 2018 date is a typographical error and that Plaintiff really meant to type January *15*, 2018 as related to Defendant Francoise.

7

block at NJSP. Medical assistants and LPNs cannot dispense medication without a prescription to inmates. (*See* ECF 66-4 at 1; ECF 66-5 at 1). Plaintiff agrees that Francoise and Desane cannot *prescribe* Glipizide. (*See* ECF 56-2 at 12). Instead:

> Plaintiff contends defendants Francoise and Desane were aware plaintiff is a diabetic, that plaintiff complained to the defendants that he was not receiving his glipizide to control his diabetes at a time he had a prescription for glipizide and did nothing to assist him, resulting in plaintiff['s] condition worsening to the point where plaintiff's blood sugar level increased dangerously high.

(ECF 56-2 at 12).

Given that Plaintiff was not prescribed Glipizide from September 12, 2017 until October 25, 2017, neither Francoise nor Desane were deliberately indifferent during this period for failing to provide Glipizide to Plaintiff because they did not have the authority to *prescribe* medication. *See, e.g.*, *Thayer v. Adams*, 364 F. App'x 883, 891 (5th Cir. 2010) (nurses did not show deliberate indifference in denying plaintiff treatment when they had no authority to prescribe drugs or embark on a different course of treatment); *Watson v. Smith*, No. 18-142, 2021 WL 3622142, at *6 (W.D.N.C. Aug. 16, 2021) (noting health assistant was entitled to summary judgment on deliberate indifference claim on failure to provide pain medication where health assistant lacked authority to prescribe a prescription); *Dotson v. Turner*, No. 18-139, 2019 WL 5104745, at *2 (E.D. Tenn. Oct. 11, 2019) (nurse defendant as a subordinate cannot be at fault for following orders of treating physician without deciding plaintiff should receive pain medication) (citations omitted); *cf. Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).

Nevertheless, Plaintiff's medical records indicate he was prescribed Glipizide again on October 25, 2017. (*See* ECF 67 at 170). Therefore, on or around that date, Francoise and Desane presumably then had authority to provide Glipizide to Plaintiff *if* he was not receiving it. Thus,

8

the period of time between October 25, 2017 and January 15, 2018 requires slightly different analysis as it relates to Francoise and Desane.

From October 25, 2017 to January 15, 2018, Plaintiff was receiving medical treatment (albeit at times for different issues). Indeed, Plaintiff's medical records provided to this Court indicate two medical appointments in November, 2017. At a November 13, 2017 sick call visit for foot cream, the medical records list Glipizide as one of Plaintiff's medications. There is no indication in the records from that visit that Plaintiff complained about not receiving one of his prescribed medications, *i.e.*, Glipizide. (*See* ECF 67 at 164). The records from a November 30, 2017 medical visit also indicate Plaintiff had no complaints and that he was *compliant* with his medications. (*See* ECF 67 at 156). Plaintiff does not appear to contest or challenge these medical records in his brief. Finally, and perhaps most tellingly, at a March 5, 2018 medical visit, Plaintiff told medical staff he "had not taken his glipizide . . . from Oct to Jan" (*see* ECF 67 at 144) but that he was now taking the medication. (*See id.* at 146). Plaintiff does not challenge that he said this at that March 5, 2018 appointment. Furthermore, Plaintiff was counseled at this meeting to comply with his medications. (*See id.*) Thus, Plaintiff's own statements indicate it was his choice, not a purported lack of availability of Glipizide, as the reason Plaintiff had not *taken* Glipizide from October, 2017 to January, 2018 as opposed to not having *received* it.

In sum, the records show Plaintiff did not complain regarding a purported lack of Glipizide availability during at least two interim medical visits between October 25, 2017 and January 15, 2018. They also indicate Plaintiff stated he "had not taken" as opposed to "had not been provided" Glipizide and was counseled about complying with his medications when he told medical staff he failed to take Glipizide for three months. Based on these undisputed facts, Francoise and Desane are entitled to summary judgment. There is no genuine issue of material

fact that either Francoise and/or Desane were deliberate indifferent for the period either prior to October 25, 2017 when Plaintiff was not prescribed Glipizide, or after October 25, 2017 when Plaintiff was re-prescribed Glipizide.

B. <u>Defendant Jackson</u>

Plaintiff next claims Defendant Jackson, an Advanced Practice Nurse ("APN"), was deliberately indifferent to Plaintiff arising from her purported lack of care at a September 7, 2017 sick call appointment.[3] At the time of this medical visit Plaintiff was not prescribed Glipizide. Unlike Francoise and Desane though, Jackson could prescribe medications. Indeed, Jackson prescribed Plaintiff Glipizide again on October 25, 2017. (*See* ECF 67 at 170). Thus, whether Jackson was deliberately indifferent requires a slightly different analysis than Francoise and Desane.

Plaintiff states at the September 7, 2017 appointment he made Jackson aware that he was not receiving Glipizide. (*See* ECF 56-2 at 11). However, as noted above, at the time, Plaintiff was not prescribed Glipizide. Despite Glipizide not being listed as one of Plaintiff's medications and Plaintiff's purported complaints about not receiving it to Jackson, Plaintiff's medical records indicate at that time that he understood and agreed with the treatment plan moving forward. (*See id.*). The plan moving forward included a follow-up in three months. (*See* ECF 67 at 178).

Plaintiff bases his claim against Jackson on the incorrect assumption he was prescribed Glipizide at the time he met with her in September, 2017. (*See* ECF 56-2 at 11). However, this prescription expired in July, 2017, two months prior to the September 7, 2017 appointment. Thus, the premise of Plaintiff's claim against Jackson, that she failed to provide him with

---

[3] Plaintiff's complaint alludes to a September 30, 2017 sick call meeting between him and Jackson. (*See* ECF 1 at 6). However, there is nothing in the record related to a September 30, 2017 meeting. Rather, the record indicates this meeting took place on September 7, 2017. (*See* ECF 67 at 174-80).

10

*prescribed* medication coming out of the September 7, 2017 meeting is unfounded. Furthermore, to the extent that Plaintiff is asserting that Jackson should have re-prescribed him Glipizide at the September 7, 2017 appointment, Jackson is also entitled to summary judgment. Plaintiff's diabetes was obviously being monitored as Plaintiff's extensive medical records indicate. That Plaintiff thought he should have been getting Glipizide to help treat his diabetes amounts to a disagreement about how the medical professionals at NJSP were treating him. This disagreement in care is insufficient to establish a genuine issue material issue of fact with respect to a respective deliberate indifference claim against Jackson. *See Hairston v. Director Bureau of Prisons*, 563 F. App'x. 893. 895 (3d Cir. 2014); *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990): *Andrews v. Camden Cty.*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000).

Furthermore, it is worth noting in late October, 2017, when Plaintiff's test results revealed elevated Hemoglobin AIC levels, Plaintiff was immediately re-prescribed Glipizide by Jackson. (*See* ECF 67 at 170). Given these circumstances, this Court fails to see any material issue of fact related to Jackson's deliberate indifference related to the purported care (or lack thereof) to Plaintiff. Accordingly, Jackson is also entitled to summary judgment

  C. Defendants Spingler & Zhou

Plaintiff's deliberate indifference claim against Defendants Spingler, a Registered Nurse ("RN"), and Zhou, also an RN, relate to their involvement as supervisors in responding to Plaintiff's administrative grievances. On October 15, 2017, Plaintiff submitted a health services request form stating as follows:

> I've been asking every nurse that comes on 2A about my diabetic K.O.P. medication Glipizide. No one seems to know why I haven't received it or took the time out to find out why?? I am out of medication and I want to know if I was discontinued or what[']s the problem. I just came from chronic care last month and the

11

>practitioner Ms. Jackson never told me she was discontinuing my
>meds[.] I would like somebody to look into this matter.

(ECF 56-4 at 1). On December 10, 2017, Defendant Spingler responded as follows, "We apologize for the issue. You currently are prescribed glipizide." (*Id.*).

Liability in a § 1983 action, including supervisory liability, must be predicated upon personal involvement, not *respondeat superior*. *Brown v. Deparlos*, 492 F. App'x 211, 214–15 (3d Cir. 2012). There are two theories of supervisory liability applicable to § 1983 claims: (1) "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"; and (2) policymakers may also be liable under § 1983 "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice[,] or custom which directly caused [the] constitutional harm.'" *See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). With respect to the second theory of liability, the plaintiff show that "(1) existing policy or practice creates an unreasonable risk of constitutional injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." *See Merring v. City of Carbondale*, 558 F. Supp. 2d 540, 547 (M.D. Pa. 2008) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)).

This case does not implicate existing policy or practice theory of supervisory liability. Instead, Plaintiff's deliberate indifference claim against Defendant Spingler and Zhou relate to their involvement in responding to his administrative health grievance. Nevertheless, a defendant's "after-the-fact participation in reviewing grievances or appeals, [is] generally an

insufficient basis to establish 'personal knowledge' for purposes of § 1983."[4] *Rosa-Diaz v. Dow*, 683 F. App'x 103, 107 (3d Cir. 2017); *Paluch v. Sec'y Pennsylvania Dep't Corr.*, 442 F. App'x 690, 695 (3d Cir. 2011). Spingler is entitled to summary judgment on Plaintiff's deliberate indifference claim. The only "personal knowledge" is her role in reviewing Plaintiff's grievance. As noted above, that is insufficient to sustain a § 1983 claim.

Defendant Zhou is entitled to summary judgment for the same reasons as is Defendant Spingler. Indeed, Plaintiff's deliberate indifference claim against Zhou is related to Zhou's response to a grievance Plaintiff submitted on October 23, 2017. That grievance stated as follows:

> I went to medical on 10-23-17 to inquire[ ] about why I haven't receiving [sic] my diabetic meds in 38 days and the nurse said to me it's not a medication that's going to kill you if you don't have it letting me know that she really didn't care about my health or well being[.] I would like for someone to look into this matter because I need my meds[.]

(ECF 56-4 at 2). Zhou responded the next day, October 24, 2017, as follows, "You are not on any diabetic meds. The provider will decide after your lab work result come out." (*See id.*). Plaintiff was prescribed Glipizide again on October 25, 2017. Because Zhou's only personal involvement in this case relates to the response to Plaitniff's October 23, 2017 grievance, for

---

[4] Courts have noted that a plaintiff may state a claim where the supervisory defendant is put on notice via a grievance about an ongoing violation. *See Cardona v. Warden-MDC Facility*, No. 12-7161, 2013 WL 6446999, at *5 (D.N.J. Dec. 6, 2013) (collecting cases and stating that "[n]umerous courts have explained that a plaintiff states a claim by alleging that a supervisory defendant reviewed a grievance where the plaintiff alleges an ongoing violation as she is personally involved in that violation because [s]he is confronted with a situation [s]he can remedy directly.") (internal quotation marks and citations omitted). The "ongoing violation" theory though is not implicated in this case given Plaintiff was prescribed Glipizide on October 25, 2017, and admitted as stated in the medical records that he had not taken (as opposed to not received) Glipizide from October, 2017 to January, 2018.

similar reasons as discussed with Defendant Spingler, Zhou is also entitled to summary judgment.

Accordingly, for all the above reasons, Moving Defendants are entitled to summary judgment because there is no genuine issue of material fact related to Moving Defendants' deliberate indifference.[5]

D. Plaintiff's Motion for Summary Judgment and for Clarity

This Court has analyzed the merits of Plaintiff's claims against all five Moving Defendants and determined that all five are entitled to summary judgment. Accordingly, Plaintiff's motion for summary judgment in his favor is denied. Plaintiff also seeks clarity in his motion for summary judgment which requests this Court consider not only his motion for summary judgment, but also as its response in opposition to Defendants' motion for summary judgment. This Court has done so.

V. CONCLUSION

For the foregoing reasons, Moving Defendants' second motion for summary judgment is granted and Plaintiff's motion for summary judgment is denied. An appropriate order will be entered.

DATED: December 27, 2021

s/<i>Peter G. Sheridan</i><br>
PETER G. SHERIDAN, U.S.D.J.

---

[5] Because Defendants are entitled to summary judgment related to a lack of deliberate indifference on their part, this Court need not analyze Defendants' alternative arguments that Plaintiff failed to exhaust his administrative remedies or that Plaintiff did not have a serious medical need.